UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23863, 10-23861-CIV-JORDAN

IN RE:  E.S. BANKEST, L.C.,

*Debtor,*

BARRY MUKAMAL, Responsible Officer
for the Reorganized Debtor E.S. Bankest, L.C.,
a Florida limited liability corporation

*Debtor/Appellee,*

v.

BDO SEIDMAN, LLP, *et al.*,

*Defendants/Appellants*.

BRIEF OF APPELLANTS BDO SEIDMAN, LLP AND SANDOR LENNER

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Karen Y. Bitar
Adam D. Cole
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Mark D. Bloom
Elliot H. Scherker
Greenberg Traurig, P.A.
333 S.E. 2nd Avenue
(333 Avenue of the Americas)
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

*Counsel for Appellants BDO Seidman, LLP and Sandor Lenner*

# TABLE OF CONTENTS

**Page**

TABLE OF CITATIONS ................................................................................................. ii

STATEMENT REGARDING ORAL ARGUMENT.................................................. iv

INTRODUCTION .......................................................................................................1

STATEMENT OF THE ISSUES ON APPEAL.........................................................2

STANDARD OF APPELLATE REVIEW..................................................................2

STATEMENT OF THE CASE AND FACTS ............................................................3

    I.     Bankest's Business, Ownership, and Management. ...............................3

    II.    The Bankruptcy Adversary Proceedings. ..............................................4

        A.    Overview.......................................................................................4

        B.    The Summary Judgment Orders. .................................................5

SUMMARY OF ARGUMENT ....................................................................................7

ARGUMENT ...............................................................................................................8

    I.     The Bankruptcy Court Misapplied Florida Law on Imputation and
        the Adverse Interest Exception. ..............................................................8

        A.    Florida Law on imputation and *in pari delicto*. .........................9

        B.    The court misapplied the adverse interest exception. ...............11

        C.    The existence of purportedly "innocent" directors does not
                render imputation and *in pari dilecto* unavailable to BDO
                as a matter of law. ......................................................................15

    II.    BDO Was Not Required To Be a Co-Conspirator in Fraud for *In
        Pari Delicto* To Apply. ........................................................................18

    III.   Imputation and *In Pari Delicto* Apply Against the Responsible
        Officer. ....................................................................................................19

CONCLUSION...........................................................................................................23

CERTIFICATE OF SERVICE ..................................................................................24

i

# TABLE OF CITATIONS

**Page**

## Cases

*Askwood v. Patterson*
    49 So. 2d 848 (Fla. 1951)................................................................ 18

*Banco Latino Int'l v. Gomez Lopez*
    95 F. Supp. 2d 1327 (S.D. Fla. 2000) ................................. 11, 12, 14

*BDO Seidman, LLP v. Banco Espirito Santo Int'l*
    38 So. 3d 874 (Fla. 3d DCA 2010) .................................................. 6

*Beck v. Deloitte & Touche*
    144 F.3d 732 (11th Cir. 1998) ............................................... passim

*Dorestin v. Hollywood Imports, Inc.*
    45 So. 3d 819 (Fla. 4th DCA 2010) ............................................... 10

*Feltman v. Prudential Bache Securities*
    122 B.R. 466 (S.D. Fla. 1990) ...................................................... 22

*Freeman v. Dean Witter Reynolds, Inc.*
    865 So. 2d 543 (Fla. 2d DCA 2003) ............................................. 22

*Hays v. Pearlman*
    2010 WL 4510956 (D.S.C. Nov. 2, 2010) ..................................... 23

*In re Delco Oil, Inc.*
    599 F.3d 1255 (11th Cir. 2010) ...................................................... 2

*In re Fuzion Technologies Group, Inc.*
    332 B.R. 225 (Bankr. S.D. Fla. 2005)........................................... 21

*In re Le-Nature's, Inc.*
    2009 WL 2009 WL 3571331 (W.D. Pa. Sept 15, 2009).......... 19, 22, 23

*In re Parmalat Secs. Litig.*
    501 F. Supp. 2d 560 (S.D.N.Y. 2007)........................................... 13

*In re Phoenix Diversified Inv. Corp.*
    439 B.R. 231 (Bankr. S.D. Fla. 2010)...................................... 16, 17

*Knauer v. Jonathon Roberts Fin. Group, Inc.*
    348 F.3d 230 (7th Cir. 2003) ................................................ 21, 22, 23

# TABLE OF CITATIONS

### (Continued)

**Page**

*Liquidation Comm'n of Banco Int'l v. Renta*
530 F.3d 1339 (11th Cir. 2008) ............................................................... 10, 12

*Luzinski v. Peabody & Arnold LLP (In re Gosman)*
382 B.R. 826 (S.D. Fla. 2007) ............................................................... 10, 18

*May v. Nygard Holdings Ltd.*
2007 WL 2120269 (M.D. Fla. July 20, 2007 ............................................ 18, 19

*O'Halloran v. PriceWaterhouseCoopers LLP*
969 So. 2d 1039 (Fla. 2d DCA 2007) ................................................... passim

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*
437 F.3d 1145 (11th Cir. 2006) ............................................................ passim

*Official Committee of Unsecured Creditors v. PriceWaterhoseCoopers, LLP*
989 A.2d 313 (Pa. 2010) ............................................................................. 23

*Pearlman v. Alexis*
2009 WL 3161830 (S.D. Fla. Sept. 25, 2009) ............................................ 21

*Scholes v. Lehman*
56 F.3d 750 (7th Cir. 1995) ......................................................... 20, 21, 22, 23

*Seidman & Seidman v. Gee*
625 So. 2d 1 (Fla. 3d DCA 1992)
*appeal dismissed*, 653 So. 2d 384 (Fla. 1995) .................................... passim

*Stermer v. Credit Exchange Corp.*
2009 WL 1203928 (S.D. Fla. 2009) ........................................................... 22

*Toranto v. Dzikowski*
380 B.R. 96 (S.D. Fla. 2007) ...................................................................... 2

## Federal Statutes

15 U.S.C. § 78j(b) ......................................................................................... 4

## Rules

Fed. R. Bankr. P. 8003(c) ............................................................................. 7

## STATEMENT REGARDING ORAL ARGUMENT

Resolution of the issues presented on this appeal will require a detailed examination of the record and governing case law.  Appellants submit that oral argument would be of material benefit to the Court.

# INTRODUCTION

In the underlying Chapter 11 bankruptcy proceeding, the "Responsible Officer" for E.S. Bankest, LC ("Bankest"), filed a multiple-count adversary complaint against BDO Seidman, LLP and Sandor Lenner (collectively, "BDO"), among other defendants, relating to financial statement audits BDO conducted for Bankest.  Bankest was a factoring company that was engaged in a pervasive fraud involving much of its management (the "Managers").

The Managers, who were appointed by Bankest's directors and owners (including 50% owner Espirito Santo Bank), created false documents to prevent BDO from detecting fraud.  And, after deceiving BDO, the Managers used the false Bankest financial statements to raise money from note investors for the stated purpose of factoring accounts receivable.  But only a very small amount of the money raised was advanced by Bankest to its clients in exchange for factored accounts receivable.  At the Managers' direction, Bankest used the bulk of the money to make direct loans to, and investments in, its purported factoring clients, thereby operating more as a merchant banker than a factor. Although contrary to its business purpose, Bankest received in exchange for its loans and investments secured commitments to repay the loans with interest, and in some instances, potential ownership interests in the clients.  The Responsible Officer claims that Bankest – as opposed to its lenders – was harmed when it incurred additional debt and its existence was prolonged into insolvency.

BDO moved for summary judgment on a number of grounds, including that the Managers' knowledge and wrongdoing is imputed to Bankest, and that the claims are

1

further precluded under the doctrine of *in pari delicto*.  The bankruptcy court denied BDO's motion, and instead *sua sponte* ruled on April 6, 1010 (the "Summary Judgment Order"), and later clarified at this Court's direction on July 23, 2010 (the "Clarification Order"), that BDO's imputation and *in pari delicto* defenses were barred as a matter of law.  The bases of the bankruptcy court's decision were:  (i) "because Bankest had four innocent directors – the Bank Directors – BDO's imputation and *in pari delicto* defenses failed"; (ii) "[t]he *in pari delicto* defense is available only to a defendant who was involved in a fraudulent scheme with a plaintiff"; and (3) "when Bankest declared bankruptcy, Bankest was no longer being run by the wrongdoers who had committed the fraud," but rather a court-appointed receiver.  (DE:302:3).

In this appeal, BDO challenges the bankruptcy court's Summary Judgment and Clarification Orders, which cannot be allowed to stand to the extent they bar BDO from asserting imputation and *in pari delicto* defenses, as a matter of law.

## STATEMENT OF THE ISSUES ON APPEAL

Whether the bankruptcy court properly granted summary judgment (in its orders dated April 6, 2010 and July 23, 2010) in ruling that BDO's *in pari delicto* and imputation defenses are barred as a matter of law.

## STANDARD OF APPELLATE REVIEW

The bankruptcy court's summary judgment in an adversary proceeding is reviewed *de novo*.  *In re Delco Oil, Inc.*, 599 F.3d 1255, 1257 (11th Cir. 2010); *Toranto v. Dzikowski*, 380 B.R. 96, 98 (S.D. Fla. 2007).

## STATEMENT OF THE CASE AND FACTS

**I.     Bankest's Business, Ownership, and Management.**

Between 1998 and August 2003, Bankest was purportedly engaged in the business of factoring accounts receivable.  (DE:1:¶17).  For most of its existence, Bankest was 50% owned by Espirito Santo Bank ("Espirito Santo") and 50% owned by Bankest Capital Corporation ("BCC").  *Id.*  Pursuant to their shareholder agreement, Espirito Santo and BCC appointed the directors of Bankest, and they also appointed Managers Hector Orlansky, Eduardo Orlansky, Dominic Parlapiano, and Carlos Mendez to manage the factoring operations of the company and, in particular, to provide BDO with the information necessary to complete its annual audits.  (DE:213-17:55-57; DE:1:¶16).

Unbeknownst to BDO, the Managers appointed to provide the information necessary to conduct the audits were engaged in a complex and massive fraud designed to "thwart" the audits.  (DE:213-21:¶¶11-15; DE:213-05:212:14-17).  The Managers, with the help of persons outside of Bankest, created fake documents, checks, invoices, collection transactions, deposit slips, minutes, bank statements, and aging reports to be provided to BDO to conduct the audits.  (DE:213-05:117-154, 210-12).  Throughout the period relevant to this action, the Managers knew that Bankest's financial statements were false (DE:213-01:34-35; DE:213-02:30; DE:213-03:25-27), but never advised BDO that their documents were fakes.  (DE:213-05:120:7-9, 142:12-21, 148:1-4).

To fund its business, Bankest issued debenture notes and took out loans, for the express purpose of using the proceeds to purchase accounts receivable.  (DE:1:¶ 19).  The Managers used the false financial statements to sell the debenture notes for Bankest.

(DE:213-05:101:4-14; DE:213-02:30).  When Bankest sold a debenture note, it received in cash the face value of the note in return. (DE:213-04:31:1-20).  Although some of the note proceeds were used to purchase accounts receivable, most of the proceeds were advanced to Bankest's "portfolio" clients in the form of direct investments and loans. (DE:213-04:32:7-15, 34:6-15, 36:8-11; DE:213-05:101:5-14; DE:213-06:66-68).

In return for the advances, Bankest received ownership interests in some of the portfolio clients.  (DE:213-19:18-19; DE:213-10; DE:213-12:¶¶7, 37-42).  Bankest also received commitments from the clients to pay back the advances, with interest, secured by their assets.  (DE:213-04; DE:213-08:2, 4; DE:213-09:3, 6; DE:213-10; DE:213-20:79-80; DE:213-23).  The Managers received no material benefit from the fraud, other than their ordinary compensation.  (DE:213-04:17-19; DE:213-13:166; DE:213-14:20:1-3).  Espirito Santo received at least $2 million in dividends and $10 million in a sale of its ownership interest in Bankest.  (DE:213-15:2; DE:213-16).

## II.     The Bankruptcy Adversary Proceedings.

### A.     Overview.

In August 2003, Bankest defaulted on the outstanding debenture notes and loans, and a receiver was appointed to take control of the company.  On August 9, 2004, Bankest filed for relief under Chapter 11 of the Bankruptcy Code.  (DE:1:¶8).  The present adversary proceeding was thereafter commenced by the "Reorganized Debtor," through its Responsible Officer, on February 22, 2006, asserting claims against BDO for: (i) professional malpractice, (ii) aiding and abetting breach of fiduciary duty, and (iii) violations of 15 U.S.C. § 78j(b) and Rule 10b-5(b).  (DE:1).

4

The adversary complaint asserts that in reliance upon BDO's allegedly faulty audits, "Bankest took on debts exceeding $170 million it could not pay" and thereby its insolvency was "deepened." (DE:1:¶¶7, 22, 57, 59, 88-89, 105, 116). The Responsible Officer's purported deepening insolvency claim was confirmed in the "Statement of Material Issues of Fact," in which he asserted that Bankest's purported "loss" was due to "increasing liabilities" from the sale of debentures to third parties. (DE:230:¶¶10, 11). Indeed, nowhere in the Statement of Material Issues of Fact did the Responsible Officer assert that the Managers stole money *from Bankest*; rather, the Statement made it clear that the fraud was designed as an engine of fraud to *induce third parties* to lend money based upon false information. (DE:230:¶27; *see* DE:230-04; DE:230-07:877).

**B.    The Summary Judgment Orders.**

On June 19, 2008, BDO moved for summary judgment on the grounds, *inter alia*, that the Responsible Officer's claims are barred:  (i) because the Managers' knowledge is imputed to Bankest and therefore the Responsible Officer is unable to establish that Bankest relied upon, and sustained damages caused by, BDO's audits; and (ii) under the doctrine of *in pari delicto*. (DE:213).  In an opinion primarily drafted by the Responsible Officer's counsel (*see* DE:287; DE:297), the bankruptcy court denied BDO's motion on April 6, 2010 and, in that Summary Judgment Order, the court appeared to rule, *sua sponte*, that the imputation and *in pari delicto* defenses were barred as a matter of law. (DE:239).  Pertinent to the bankruptcy court's Summary Judgment Order were:  (i) a prior order denying BDO's motion to dismiss and ruling that *in pari delicto* was precluded, even though neither imputation nor *in pari delicto* had been previously raised

5

(*see* DE:14); (ii) an order entering summary judgment on BDO's claim in the Bankest bankruptcy case, which order was thereafter vacated by this Court; and (iii) a state court jury verdict that was ultimately reversed and remanded for a new trial by the Florida Third District Court of Appeal. *BDO Seidman, LLP v. Banco Espirito Santo Int'l*, 38 So. 3d 874 (Fla. 3d DCA 2010).

On April 12, 2010, BDO moved for leave to appeal the Summary Judgment Order, based upon the bankruptcy court's reliance on its prior orders as law of the case. (DE:244; DE:249).  This Court granted BDO's motion on June 10, 2010, for the limited purpose of directing the bankruptcy court to clarify whether the Summary Judgment Order barred BDO from pursuing its imputation and *in pari delicto* defenses as a matter of law.  (DE:287-2).

The bankruptcy court thereafter entered a Partial Summary Judgment, in conjunction with its Clarification Order, on July 23, 2010.  (DE:302; DE:303; DE:304). The court granted partial summary judgment, "as a matter of law, in favor of the Plaintiff and against [BDO] on the affirmative defense[s] of *in pari delicto* and imputation," precluding evidence on those issue at trial.  (DE:303:2).  The order further states that "Plaintiff's claims are not barred by the application of the in pari delicto and imputation defense[s]," and that BDO is "precluded from affirmatively asserting the *in pari delicto* and imputation defense in this case."  *Id.*  In the Clarification Order, the court clarified that its April 6, 2010 Summary Judgment Order intended to bar BDO from presenting imputation and *in pari delicto* defenses on three grounds.  (DE:302).

First, the bankruptcy court concluded that "because Bankest had four innocent directors – the Bank Directors – BDO's imputation and *in pari delicto* defenses failed." *Id*. at 4. Second, "[t]he *in pari delicto* defense is available only to a defendant who was involved in a fraudulent scheme with a plaintiff." *Id*. And third, the court "clarified," based on a theory entirely absent from the Summary Judgment Order, that, "when Bankest declared bankruptcy, Bankest was no longer being run by the wrongdoers who had committed the fraud," but rather a court-appointed receiver. *Id*.

On August 9, 2010, this Court granted, in part, BDO's motion for leave to appeal the bankruptcy court's summary judgment, as clarified by the Clarification Order, pursuant to Rule 8003(c) of the Federal Rules of Bankruptcy Procedure. (DE:329:Ex.A). The Court granted the motion "*only* as to whether their '*in pari delicto*' and 'imputation' defenses are barred *as a matter of law*." *Id*. (original emphasis).

## SUMMARY OF ARGUMENT

The bankruptcy court's Summary Judgment Order, Partial Summary Judgment Order and Clarification Order are erroneous and should be reversed. First, the "innocent director" exception to imputation is triggered only after the court initially determines that the company derived *absolutely no benefit* from the wrongdoing. The bankruptcy court made no such predicate determination, and indeed the uncontested evidence demonstrated that Bankest enjoyed, at a minimum, a short-term benefit from the Managers' fraud. The "innocent director" exception was, therefore, inapplicable. And even if it were applicable, the evidence demonstrates that the "innocent directors" were far from "innocent" because they vested full authority in the wrongdoers to engage in the

very activity that turned out to be fraudulent, without any measurable supervision and while ensuring millions of dollars for their own principal – Espirito Santo.

Second, the bankruptcy court erred in concluding that *in pari delicto* requires BDO to have been complicit in Bankest's fraudulent scheme.   Under Florida law, *in pari delicto* requires only that Bankest have contributed to BDO's alleged wrongdoing, which Bankest did by providing much of the false information upon which BDO relied in connection with its allegedly faulty audits.   For this separate reason, the summary judgments were erroneous.

Finally, the bankruptcy court misapplied the purported "receiver" exception to imputation and *in pari delicto*.  The receiver exception applies – and rightfully so given a receiver's principal responsibility – only when the receiver seeks to recover corporate property that was wrongfully distributed before the company was placed into receivership.   The exception precludes the recipient of the wrongful transfer from retaining the fruits of the fraud by claiming that the company knew about, and was complicit in, the transfer.   The receiver exception has no principled application in the context of direct negligence or other tort claims in which damages are sought, such as in the present action.

## ARGUMENT

### III.   The Bankruptcy Court Misapplied Florida Law on Imputation and the Adverse Interest Exception.

The bankruptcy court's initial basis for barring BDO from asserting imputation and *in pari delico* was its conclusion that "because Bankest had four innocent directors --

the Bank Directors − BDO's imputation and *in pari delicto* defenses failed." (DE:302).

The bankruptcy court's legal conclusion is erroneous and should be reversed.

### A.   Florida Law on imputation and *in pari delicto*.

It is a basic principle of agency law that because a corporation may act only through individuals, the actions taken by, and the knowledge of, management are imputed to the corporation. *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. 3d DCA 1992), *appeal dismissed*, 653 So. 2d 384 (Fla. 1995). Agency law *presumes* imputation, even where the management agent acted in a less-than-laudable manner, or committed fraud, and even where the misbehavior resulted in the company's insolvency. *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998); *Gee*, 625 So. 2d at 3. Thus, imputation provides "an absolute defense" to a corporation's claim that its financial statement auditor failed to detect a corporate officer's fraud, such as the Responsible Officer's claims against BDO in this action. *E.g.*, *Gee*, 625 So. 2d at 3 (reversing and ordering that judgment be entered in favor of auditor based upon imputation). Or stated another way, the analysis must begin with the presumption that the Managers' fraud − everything they did, and everything they knew − is imputed to Bankest, thereby reflecting the policy of requiring owners to police their agents to ensure that their actions do not result in more harm than good. *See* RESTATEMENT (THIRD) OF AGENCY § 5.03, cmt. b ("[i]mputation creates incentives for a principal to choose agents carefully and to use care in delegating functions to them").

*In pari delicto* is related. Rather than a *legal* bar to recovery based upon the corporation's imputed knowledge of wrongdoing, *in pari delicto* is an *equitable* concept

founded on the principle that the court will not intercede as the paymaster to resolve disputes between wrongdoers. *See Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006) (*in pari delicto* is "based on the policy that courts should not lend their good offices to mediating disputes among wrongdoers") (citations and internal quotations omitted); *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 822 n. 2 (Fla. 4th DCA 2010) (*in pari delicto* is "'[t]he principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing'"). *In pari delicto* bars recovery even where a defendant's actions rise to the level of fraud, if the plaintiff's actions are equally fraudulent, or where the plaintiff bears "greater responsibility for the wrongdoing than the defendant." *Luzinski v. Peabody & Arnold LLP (In re Gosman)*, 382 B.R. 826, 837-38 (S.D. Fla. 2007); *accord Dorestin*, 45 So. 3d at 822-23 (*in pari delicto* barred fraud where plaintiff "also engaged in fraud" and "participated in the illegal conduct"). Indeed, the "justice" of the rule is most obvious where a willful wrongdoer sues a negligent one.

*In pari delicto* goes hand in hand with imputation where, as here, a corporate entity is the putative plaintiff. After all, before a corporate entity may be *in pari delicto*, the wrongful acts of its managers must first be imputed. For this reason, in cases involving corporate plaintiffs, imputation and *in pari delicto* are often considered as part of the same inquiry, particularly where a receiver or trustee is the nominal plaintiff. *See Liquidation Comm'n of Banco Int'l v. Renta*, 530 F.3d 1339 (11th Cir. 2008) (receiver); *O'Halloran v. PriceWaterhouseCoopers LLP*, 969 So. 2d 1039, 1046 (Fla. 2d DCA 2007) (trustee).

There is no dispute that the Managers were appointed to manage Bankest, including providing BDO with information necessary for its audits. (DE:213-21:¶¶11-15; DE:213-05:212:14-17). It is also uncontested that those same Managers engaged in fraud in connection with BDO's audits by creating false documents designed to interfere with the audit process, and knowing that the financial statements were false. (DE:213-05:117-154, 210-12; DE:213-01:34-35; DE:213-02:30; DE:213-03:25-27). There is also no dispute that the Managers used the false financial statements to induce third-party investors to lend money to Bankest, thereby increasing the amount of money Bankest ultimately owed. (DE:213-05:101:4-14; DE:213-02:30; DE:213-04:32:7-15, 34:6-15, 36:8-11; DE:213-05:101:5-14; DE:213-06:66-68). Florida law *presumes* the Managers' fraud and knowledge is imputed to Bankest in the first instance.

### B.    The court misapplied the adverse interest exception.

To defeat imputation, the Responsible Officer bore the burden of showing that Bankest's Managers acted "entirely adverse" to Bankest. *Beck*, 144 F.3d at 736 (*citing Gee*, 625 So. 2d at 3). This "adverse interest" exception is narrow, and thus imputation remains an absolute defense unless the Responsible Officer proves that Bankest "derived absolutely no benefit from those actions." *Banco Latino Int'l v. Gomez Lopez*, 95 F. Supp. 2d 1327, 1336 (S.D. Fla. 2000). Even a "short-term" benefit to the corporation renders the "adverse interest" exception inapplicable. *Beck*, 144 F.3d at 736; *Gee*, 625 So. 2d at 3.

Thus, determining whether the "adverse interest" exception applies necessarily focuses on whether the agent's misconduct benefitted the corporation. *O'Halloran*, 969

11

So. 2d at 1046.  Where the agent turns the company against third parties as an "engine of theft," the misconduct is imputed because the agent's fraud benefits the company by generating assets "acquired along the way, pursuant to the fraudulent plan," even if the misconduct drives the company into insolvency.  *Gee*, 625 So. 2d at 2-3.  At the other extreme is the "classic example" of when the fraud consists entirely of "looting" the company, because in that circumstance, the actions are wholly adverse and the company is "purely the victim of the misconduct."  *O'Halloran*, 969 So. 2d at 1046.

Ultimately, the crucial distinction is between fraud against the corporation − such as theft from the company − and conduct that defrauds outsiders, at least in the short term, for the company's benefit − such as inducing investors to lend money to the company.  *Banco Latino*, 95 F. Supp. 2d at 1336.  It is for this reason that actions to recover against fraudsters (and their co-conspirators) who embezzled assets, or against the recipients of wrongfully transferred assets, typically fall within the adverse interest exception, because the claim, by definition, seeks to recover "looted" assets.  *See, e.g.*, *Renta*, 530 F.3d at 1355 (no imputation in RICO and fraudulent transfer claims seeking amounts "looted").  In contrast, claims seeking damages in tort relating to transactions with third parties in which the company benefits, at least temporarily, are not protected from imputation by the adverse interest exception.  *See, e.g.*, *Banco Latino*, 95 F. Supp. 2d at 1336 (summary judgment on fraud and conspiracy claims because the plaintiff, and its parent companies "temporarily benefitted" from the disputed transactions); *Gee*, 625 So. 2d at 2-3 (directing summary judgment on remand where officer's fraud "intended to and did benefit the corporation").

12

Here, the evidence submitted in support of BDO's summary judgment motion was uncontested and proved that Bankest's Managers caused Bankest to sell debenture notes to third parties using false financial statements, in exchange for which *Bankest* received cash.  (DE:213-05:101:4-14; DE:213-02:30; DE:213-04:31:1-20).  At the point cash was received into Bankest's accounts, the Managers' fraud against the third-parties that purchased the notes benefitted Bankest by increasing its assets.  *See also In re Parmalat Secs. Litig.*, 501 F. Supp. 2d 560, 574 (S.D.N.Y. 2007) ("[w]hen, for example, a company borrows cash and receives the full amount of the loan, it receives an asset that directly offsets the newly incurred liability on its balance sheet").  Thereafter, a small amount of the cash raised was used to purchase accounts receivable for Bankest's benefit, and most of the money was advanced to Bankest's "portfolio" clients in the form of direct investments and loans, in return for which Bankest received ownership interests in certain clients and commitments to pay back the advances secured by assets of others, also for Bankest's benefit.  (DE:213-04:32:7-15, 34:6-15, 36:8-11; DE:213-05:101:5-14; DE:213-06:66-68; DE:213-08:2, 4; DE:213-09:3, 6; DE:213-10; DE:213-12:¶¶7, 37-42; DE:213-19:18-19; DE:213-20:79-80; DE:213-23).  These "short-term" benefits, combined with the Responsible Officer's intent to seek damages based upon the Managers having induced third-parties to lend money to Bankest (DE:230:¶27; *see* DE:230-4; DE:230-7:877), precluded application of the adverse interest exception, even though Bankest ultimately was driven into insolvency.  *Beck*, 144 F.3d at 736; *Gee*, 625 So. 2d at 3.

There is no dispute that Bankest was a beneficiary of the fraud.  Indeed, the Managers received no material benefit from the fraud, other than their ordinary

13

compensation.  (DE:213-04:17-19; DE:213-13:166; DE:213-14:20:1-3).  By contrast, the uncontested evidence established that Espirito Santo received millions of dollars, in the form of $2 million in dividends and $10 million in a sale of its ownership interest in Bankest.  (DE:213-15:2; DE:213-16).  *See Banco Latino*, 95 F. Supp. 2d at 1336 (adverse interest exception inapplicable where parent companies "temporarily benefitted" from fraud).

The bankruptcy court did not mention "looting" as a basis for summary judgment in its Clarification Order, but, in its Summary Judgment Order, the court ruled that looting precluded imputation because "driving the company into debt is not a benefit to the corporation."  (DE:239:17).  The court was mistaken.  As explained above, incurring debt even past the point of insolvency does not constitute fraud that is entirely adverse to a corporation's interest, and therefore imputation and *in pari delicto* should not have been precluded as a matter of law on this ground.  *See Beck*, 144 F.3d at 736 ("[u]nder Florida law, the knowledge of a corporate officer whose fraud or misbehavior brings short-term gain to the corporation, or merely injures a third party, is imputed to the corporation, even if the officer's misbehavior ultimately causes the corporation's insolvency").

In the April 6, 2010 Summary Judgment Order principally drafted by the Responsible Officer's counsel, the bankruptcy court also referred to the Managers having "diverted the looted funds."  (DE:239:18).  But on the prior page, the Summary Judgment Order states that the Managers "stole hundreds of millions of dollars by presenting false financial statements to Espirito Santo bank *in order to continue obtaining funding*" for Bankest.  (DE:239:17) (emphasis added).  That conclusion is supported by undisputed

14

evidence, which includes transcript references from a related state court trial, to which the court pointed, and in which related proceeding the "theft" consisted of money from *noteholders*, not from Bankest.  (DE:230-7[Ex. 37]:868 [false financial statements "in order to continue to receive funding for the company"], 877-78 [audits used to "induce investors to lend monies to the company," which was the money "stolen as part of the fraud"]).

In short, the bankruptcy court's application of the adverse interest exception to bar BDO from asserting imputation and *in pari delicto* should be reversed.  Imputation applies because Bankest received benefits from the Managers' fraud, and was used as an "engine" of theft, to take money from third-party noteholders, *not* from Bankest. *O'Halloran*, 969 So. 2d at 1046; *Gee*, 625 So. 2d at 2-3.

C.     **The existence of purportedly "innocent" directors does not render imputation and *in pari dilecto* unavailable to BDO as a matter of law.**

Because the evidence demonstrates that Bankest received, at a minimum, a short-term benefit from the Managers' fraud, the Managers' wrongdoing and knowledge is imputed to Bankest.  The bankruptcy court nonetheless barred imputation, "because Bankest had four innocent directors," contrary to Florida law.  (DE:302:4).

The bankruptcy court appears to have focused on the "sole actor exception" to the adverse interest exception − the proverbial exception to the exception.  The sole actor exception would come into play if the Managers' actions were entirely adverse to the plaintiff corporation (such that ordinarily imputation does not apply), but knowledge and wrongdoing are still imputed because "the corporation is wholly dominated by persons

engaged in wrongdoing." *O'Halloran*, 969 So. 2d at 1045. That is, where the corporation acts as the "alter ego" of the fraudsters, "the corporation has itself become the instrument of wrongdoing." *Id*. In determining whether the exception to the exception applies, *i.e.*, whether the corporation is dominated by a wrongful actor, the law examines whether there is an "innocent decision-maker" in the corporation's management, thereby divesting the wrongdoer of dominance. *Id*.; *see In re Phoenix Diversified Inv. Corp.*, 439 B.R. 231, 242 (Bankr. S.D. Fla. 2010) (in determining whether the sole actor exception applies, courts "consider whether there exist relevant decision-makers who are innocent of the fraud").

The bankruptcy court placed the "cart before the horse" in declaring imputation and *in pari delicto* barred "because Bankest had four innocent directors." (DE:302:4). BDO moved for summary judgment (supported by uncontested evidence) because Bankest had obtained a benefit from the Managers' fraud, the fraud was directed to third-party noteholders, and the Managers' knowledge and wrongdoing was therefore imputed to Bankest. *Gee*, 625 So. 2d at 2-3. At no point did BDO − or anyone for that matter − contend that Bankest was dominated by the Managers. Accordingly, there was no reason for the bankruptcy court to determine whether there existed "innocent" members of Bankest's management because the "sole actor" exception to the adverse interest exception was inapplicable.

To the extent the bankruptcy court's Summary Judgment Order, Partial Summary Judgment Order and Clarification Order declare a new rule under Florida law − that the existence of innocent directors precludes imputation even where the company gains a

benefit and is an engine of fraud − they should be rejected.  Both the Eleventh Circuit and Florida state courts have consistently held that where a company gains a benefit from fraud or operates as an engine of fraud against outsiders, the wrongdoing of the company's agents is imputed to the company without reference to whether the company has "innocent" members of management.  *Beck*, 144 F.3d at 736; *Gee*, 625 So. 2d at 3; *see O'Halloran*, 969 So. 2d at 1046 ("determining whether misconduct should be imputed to a corporation requires that the focus of analysis be on whether the misconduct was calculated to benefit the corporation").  Indeed, any ruling otherwise would swallow decades of decisional law.  *See, e.g.*, *Phoenix Diversified*, 439 B.R. at 242 n.2 (rejecting the innocent decision-maker analysis as an exception to imputation because "[s]uch an application of the innocent decision-maker principle is not consistent with basic tenets of agency law").[1]

In sum, the bankruptcy court's ruling that the adverse interest exception and the presence of four "innocent" directors barred imputation and *in pari delicto* was erroneous as a matter of law and should be reversed.

---

[1]   In any event, the so-called "innocent" directors and owners were not innocent for purposes of the sole actor exception.  The "innocent" directors and owners benefitted from the fraud, and vested complete authority in the Managers to manage Bankest's financial statements, and to provide BDO with the information it needed to conduct its audits.  (DE:213-17:55-57; DE:1:¶16).  As compared to BDO, which was the recipient of the false information, the directors and owners are not innocent in the manner necessary to overcome the sole actor exception − even if applicable − because they bore the risk that their unaccountable agents would act adversely to the company.  *See O'Halloran*, 969 So. 2d at 1045 n.5.

IV.    **BDO Was Not Required To Be a Co-Conspirator in Fraud for *In Pari Delicto* To Apply.**

The bankruptcy court's next "clarified" basis for summary judgment – that *in pari delicto* "is available only to a defendant who was involved in a fraudulent scheme with a plaintiff" – is also erroneous.  (DE:302:4).   Under the doctrine of *in pari delicto*, "a plaintiff who has participated in wrongdoing may not recover damages from the wrongdoing."   *Edwards*, 437 F.3d at 1152 (citation omitted).   In this instance, the applicable "wrongdoing" is that alleged against the defendant − here BDO − not the broader fraud the Managers conducted on behalf of Bankest.  *O'Halloran*, 969 So. 2d at 1047 (dismissal reversed where there was "no allegation that the corporate insiders participated in the *specific wrongdoing alleged against* [the accounting firm]") (emphasis added).   And even if the wrongdoing was not exactly the same, Florida nevertheless prohibits a person from profiting "'by his own fraud, or tak[ing] advantage of his own wrong, or found[ing] any claim upon his own iniquity, or profit[ing] by his own crime.'" *Luzinski*, 382 B.R. at 838 (quoting *May v. Nygard Holdings Ltd*., 2007 WL 2120269, at *4 (M.D. Fla. July 20, 2007) (quoting *Askwood v. Patterson*, 49 So. 2d 848, 850 (Fla. 1951)).

The principal "wrongdoing" alleged against BDO is that it conducted faulty audits of Bankest's financial statements, and failed to detect fraud through those audits.  It is undisputed that the Managers whom Bankest's directors and owners had appointed to provide BDO with critical information necessary to conduct the audits were engaged in a complex fraud expressly designed to "thwart" the audit function.  (DE:213-21:¶¶11-15;

DE:213-05:212:14-17).   The Managers knowingly created fake documents, checks, invoices, collection transactions, deposit slips, minutes, bank statements, and aging reports, all of which were provided to BDO in an effort to interfere with the very audits upon which the Responsible Officer's claims are now based.  (DE:213-05:117-154,  210-12).   Because Bankest's Managers directly "participated" in BDO's alleged "wrongdoing," BDO was entitled to pursue its *in pari delicto* defense, and the bankruptcy court's ruling to the contrary was erroneous.   Indeed, apart from the Managers' fraudulent activity, BDO would never have conducted allegedly faulty audits, and no fraud in inducing investments from third parties would ever have occurred.  *May*, 2007 WL 2120269, at *4 (denying plaintiff summary judgment on *in pari delicto* defense where evidence demonstrated that plaintiffs initiated the fraud that led to harm).

## V.    Imputation and *In Pari Delicto* Apply Against the Responsible Officer.

The bankruptcy court's Clarification Order added a new ground for summary judgment, which had not been previously briefed, based upon an unreported decision of the Western District of Pennsylvania that postdated briefing and oral argument. (DE:302:4).  Relying on *In re Le-Nature's, Inc*., 2009 WL 3571331 (W.D. Pa. Sept 15, 2009), the bankruptcy court "clarified" that BDO's imputation and *in pari delicto* defenses were barred because "when Bankest declared bankruptcy, Bankest was no longer being run by the wrongdoers who had committed the fraud."  (DE:302:4).  The court reasoned that, by the time Bankest filed for bankruptcy, a receiver had been appointed to replace Bankest's corrupt management, and therefore "there is no fraud to impute."  *Id*. at 5.  The bankruptcy court's "clarification" was erroneous for two reasons.

19

First, while a receiver was appointed for Bankest prior to its bankruptcy, this action was filed *post*-bankruptcy by the Responsible Officer, who was appointed pursuant to federal bankruptcy law.  (DE:1:¶8).  The *receiver* never commenced an action against BDO for negligence, and indeed the receiver's job was to attempt to marshal Bankest's assets and recover funds that had been transferred unlawfully.  Rather, this action, which is based upon BDO's audits predating the receiver, was commenced by Bankest's post-bankruptcy Responsible Officer, who, in bankruptcy, stands in the shoes of Bankest.  The Responsible Officer is subject to the same defenses as those that could have been asserted against Bankest, including imputation and *in pari delicto*.  *Edwards*, 437 F.2d at 1152.

The second, and perhaps more important reason, is that the "receiver" exception arose out of an interest in protecting a receiver's ability to perform its most basic function − to recover the assets that were wrongfully transferred from the company that formed the justification for the receivership in the first place.  The analysis starts with the Seventh Circuit's decision in *Scholes v. Lehman*, 56 F.3d 750, 754-55 (7th Cir. 1995), in which a receiver sought to recover for an imprisoned owner's fraudulent conveyances of company assets from a recipient.  The Seventh Circuit overruled the defendant's *in pari delicto* defense, holding that while a company (and its owner) that engaged in the Ponzi scheme would ordinarily not be permitted to profit from its wrongdoing by recovering the embezzled funds, the appointment of a receiver relieved the Ponzi entities from being the owner's "evil zombies" and thus "[f]reed from [the owner's] spell they became entitled to the return of the moneys."  *Scholes*, 56 F.3d at 754.

20

The Seventh Circuit thereafter revisited the "receiver" exception in *Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230, 236 (7th Cir. 2003), which also involved a corporate Ponzi scheme for which a receiver was appointed.  Unlike *Scholes*, however, the receiver in *Knauer* sought not to void a fraudulent conveyance, but to recover based in tort and federal securities laws "from entities that derived no benefit from the embezzlements, but that were allegedly partly to blame for their occurrence." *Id*.  The Seventh Circuit permitted *in pari delicto* because the claims and parties "present[ed] a different equitable alignment" than *Scholes*, the "key difference, for purposes of equity" being that unlike the receiver "seeking to recover the diverted funds from the beneficiaries of the diversions," the claims in *Knauer* − as in the present case − were for tort damages from entities that derived no benefit from improper transfers.  *Id.* It is for this reason that courts preclude *in pari delicto* in receiver actions seeking recovery of ill-transferred assets, including in the cases referred to by the bankruptcy court as the "substantial law."  (DE:302:5)  *See Scholes*, 56 F.3d at 754-55 (fraudulent transfer claim); *Pearlman v. Alexis*, 2009 WL 3161830, at *2-4 (S.D. Fla. Sept. 25, 2009) (same).[2]

In Florida, as in the jurisdictions in which *Scholes* and *Knauer* arose*,* a receiver generally "stands in the shoes" of the receivership entities, and is subject to the same

---

[2]  The bankruptcy court also referred to *In re Fuzion Technologies Group, Inc.*, 332 B.R. 225, 233 (Bankr. S.D. Fla. 2005), which held that *in pari delicto* was inapplicable to a bankruptcy trustee.  (DE:302:5).  *Fuzion* is no longer persuasive authority, however, given that the Eleventh Circuit resolved the issue, declaring that *in pari delicto*, indeed, may be asserted against a bankruptcy trustee.  *Edwards*, 437 F.2d at 1152.

defenses and limitations that the law permits.  *Stermer v. Credit Exchange Corp.*, 2009 WL 1203928 at * 1 n.1 (S.D. Fla. 2009).  Indeed, the receiver exception declared in *Scholes* (and subsequently limited in *Knauer*) has been considered by the Second District Court of Appeal in *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 551 (Fla. 2d DCA 2003) − which the bankruptcy court did not reference − in which the court attempted to "reconcile" the instances in which the exception applied from those in which it did not.  Based upon *Scholes*, the court recognized that "[a]lthough a receiver receives his or her claims from the entities in receivership, a receiver does not always inherit the sins of his predecessors," and was "inclined to believe that the receiver may also pursue *certain claims* that would be barred by the defense of *in pari delicto* if pursued by the corporation that was placed in receivership" − the "claims" in *Scholes* being for fraudulent transfers. *Id*. at 550 (emphasis added).  Thus, *Freeman* would permit "actions that the corporation, which has been 'cleansed' through receivership, may bring directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership." *Id*. at 551.  *Freeman* also acknowledged that *in pari delicto* barred receiver claims at the far other end of the spectrum, consisting of those based in common law tort on behalf of a sham corporation having no separate identity from its fraudulent principal.  865 So. 2d at 551 (*citing Feltman v. Prudential Bache Securities*, 122 B.R. 466 (S.D. Fla. 1990)).

        Unlike the Florida courts, the court in *Le-Nature's*, upon which the bankruptcy court principally relied (DE:302:4-5), did not mention *Scholes* or *Knauer* or their analyses relating to the instances in which the receiver exception is properly applied.  *Le-*

*Nature's*, 2009 WL 3571331.  The court in *Le-Nature's* instead appears to have been applying Pennsylvania law, without any reference to a case applying a receiver exception, and which has very recently been clarified in *Official Committee of Unsecured Creditors v. PriceWaterhoseCoopers, LLP*, 989 A.2d 313 (Pa. 2010).  The bankruptcy court's reliance upon *Le-Nature's*, accordingly, appears to have been misplaced.

The present case falls within the principles set forth in *Knauer*. The Responsible Officer asserts common-law and federally based tort claims against BDO for damages relating to its audit, not for a return of funds wrongfully transferred, as in *Scholes*.  As in *Knauer*, BDO "derived no benefit" from ill-transferred assets, but instead is alleged to have been "partly to blame" for alleged damages suffered by Bankest.  348 F.3d at 236; *accord Hays v. Pearlman*, 2010 WL 4510956 at *7 (D.S.C. Nov. 2, 2010) (receiver common law claims barred by *in pari delicto*).  Under these circumstances, the Responsible Officer's claim is subject to BDO's imputation and *in pari delicto* defenses, even assuming the receiver exception applies in this action commenced by a bankruptcy-authorized plaintiff.  *Edwards*, 437 F.3d at 1152.

## CONCLUSION

For the reasons discussed above, BDO respectfully requests the Court to reverse the summary judgment orders.

Respectfully submitted,

| | |
|---|---|
| Karen Y. Bitar | Mark D. Bloom |
| Adam D. Cole | Elliot H. Scherker |
| Greenberg Traurig, LLP | Greenberg Traurig, P.A. |
| 200 Park Avenue | 333 S.E. 2d Avenue |
| New York, New York 10166 | (333 Avenue of the Americas) |
| Telephone: 212.801.9200 | Miami, Florida 33131 |
| Facsimile: 212.801.6400 | Telephone:  305.579.0500 |
| | Facsimile:  305.579.0717 |

By:  /s/ Elliot H. Scherker
Elliot H. Scherker

*Counsel for Appellants BDO Seidman, LLP and Sandor Lenner*

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2011, I electronically filed the foregoing brief of appellants with the Clerk of the Court using CM/ECF.  I also certify that the brief is being served this day on all counsel of record or pro se parties identified in the service list below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Elliot H. Scherker
Elliot H. Scherker

24

## Service List

Mark F. Raymond
Rhett Traband
Broad and Cassel
One Biscayne Tower, 21st Floor
2 South Biscayne Blvd.
Miami, Florida 33131

Steven W. Thomas
Emily R. Alexander
Thomas, Alexander & Forrester, LLP
14 27th Avenue
Venice, CA 92091

Warren R. Trazenfeld
3225 Aviation Avenue, Suite 600
Miami, Florida 33133-4741

Office of the U.S. Trustee
51 S.W. First Avenue, Room 1204
Miami, Florida 33130

Paul J. Battista
Genovese Joblove & Battista, P.A.
100 S.E. Second Street, 44th Floor
Miami, Florida 33131

Daniel F. Blonsky
Coffey Burlington
Office in the Grove, Penthouse A
2699 South Bayshore Drive
Miami, Florida 33133

Kevin W. Goering
Lisa M. Lewis
Sheppard, Mullin, Richter & Hampton, LLP
30 Rockefeller Plaza, 24th Floor
New York, New York 10112